UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO.  8:24-cr- 249 SDM -TGW

18 U.S.C. § 1349

ANGEL JACKSON

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
### (Conspiracy to Commit Bank Fraud)

#### A.    Introduction

At times material to this Indictment:

1.    Mortgage Company 1 was a financial institution as defined by the Fraud Enforcement and Recovery Act of 2009, that is, an organization that financed and refinanced debt secured by an interest in real estate and with activities that affected interstate and foreign commerce. Mortgage Company 1 had offices in the Middle District of Florida and elsewhere.

2.    Mortgage Company 2 was a financial institution as defined by the Fraud Enforcement and Recovery Act of 2009, that is, an organization that financed and refinanced debt secured by an interest in real estate and with activities that affected interstate and foreign commerce. Mortgage Company 2 had offices in the Middle District of Florida and elsewhere.

3.     It was the practice of many lending institutions, including Mortgage Company 1 and Mortgage Company 2, to make loans secured by real property to borrowers or to refinance existing loans secured by real property. Such loans were typically called mortgages or mortgage loans. In determining whether to extend any such loan, it was the practice of Mortgage Company 1 and Mortgage Company 2 to rely upon the information contained in a borrower's mortgage-related documents, such as Form 1003, Uniform Residential Loan Application (referred to herein as the loan application), the Closing Disclosure, and the mortgage itself.

4.     The loan application and supporting documentation were relied on by mortgage lenders in the mortgage loan approval process. The loan application required the borrower to truthfully provide the mortgage lender with various types of information, including the borrower's place of employment, gross monthly income, source of closing costs and down payment, intended use of the property (such as investment or secondary residence), and the specific details of the anticipated real estate transaction.

5.     When Mortgage Company 1 or Mortgage Company 2 received a loan application, this typically triggered what was known in the mortgage industry as the underwriting process. The primary purpose of the underwriting process was to determine the ability of the borrower to repay the mortgage loan being requested. During the underwriting process, Mortgage Company 1 or Mortgage Company 2 considered a variety of factors in determining whether to issue a mortgage loan, including the borrower's sources of income, assets, and liabilities. Mortgage

Company 1 and Mortgage Company 2 considered the amount and source of a borrower's gross income and assets on hand to be important factors in assessing a borrower's financial health and determining the borrower's ability to repay the mortgage loan.

6.      Defendant ANGEL JACKSON (hereinafter "JACKSON") was a resident of the Middle District of Florida.

7.      Co-conspirator Kenneth Blair (hereinafter "Blair") was a resident of the Middle District of Florida. Blair worked as a "mortgage consultant" and "credit repair specialist."

8.      Car Service Company 1 was a New York corporation based in the Bronx, New York.

9.      Trucking Company 1 was a Florida limited liability company based in the Middle District of Florida.

10.     HVAC Company 1 was a Florida limited liability company based in the Middle District of Florida.

## B.      The Conspiracy

11.     From an unknown date, but at least as early as in or around June 2018, and continuing through in or around July 2021, in the Middle District of Florida, and elsewhere, the defendant,

## ANGEL JACKSON,

did willfully and knowingly combine, conspire, confederate and agree with co-conspirator Blair, and with others known and unknown to the Grand Jury, to

knowingly, and with intent to defraud, execute and attempt to execute a conspiracy to defraud financial institutions, and to obtain monies, funds, credits, assets, and other property owned by, and under the custody and control of, one or more financial institutions, by means of materially false and fraudulent pretenses, representations, promises, and omissions relating to a material fact, in violation of 18 U.S.C. § 1344.

### C.    Manner and Means of the Conspiracy

12.    The manner and means by which JACKSON, Blair, and others sought to accomplish the object of the conspiracy included, among others, the following:

a.    It was part of the conspiracy that Blair would and did receive referrals of individuals seeking credit repair services and mortgage financing to purchase residential real estate.

b.    It was a further part of the conspiracy that Blair would and did collect information from individuals seeking mortgages including, but not limited to, employment related documents, bank account statements, tax returns, drivers' licenses, and Social Security cards to assist in the preparation of mortgage loan applications.

c.    It was a further part of the conspiracy that Blair would and did use the means of identification of the individuals seeking mortgages to create and cause to be created false and fictitious paystubs and other employment-related documents for the individuals in the names of Car Service Company 1, Trucking Company 1, HVAC Company 1, and other companies, notwithstanding the fact that

said individuals had never worked for any of the companies, in order to deceive Mortgage Company 1 and Mortgage Company 2 into approving mortgages for the individuals.

   d. It was a further part of the conspiracy that JACKSON would and did approach Blair offering, in exchange for payment, to alter legitimate bank statements or create fictitious bank statements, create fictitious paystubs, and/or alter legitimate Social Security benefits letters in the names of individuals seeking mortgages who had been referred to Blair.

   e. It was a further part of the conspiracy that after electronically receiving legitimate bank statements in the names of individuals seeking mortgages from Blair, JACKSON would and did alter the legitimate bank statements and/or manufacture entirely new fictitious bank statements showing falsely inflated account balances and fabricated direct deposits from employers with whom the individuals had no relationships.

   f. It was a further part of the conspiracy that after electronically receiving the names of these employers, purported dates of pay, and supposed employee salary information from Blair, JACKSON would and did create fictitious paystubs in the names of HVAC Company 1 and other companies showing fabricated earnings for the individuals seeking mortgages.

   g. It was a further part of the conspiracy that after electronically receiving legitimate Social Security benefits letters in the names of individuals seeking mortgages or their dependents from Blair, JACKSON would and did alter

the legitimate Social Security benefits letters to falsely show inflated benefits payments.

h.    It was a further part of the conspiracy that after altering legitimate bank statements or creating fictitious bank statements, fraudulent paystubs, and altered Social Security benefits letters, JACKSON would and did demand payment from Blair and would and did receive payment via electronic funds transfers from Blair.

i.    It was a further part of the conspiracy that JACKSON would and did provide the altered or fictitious bank statements, fraudulent paystubs, or altered Social Security benefits letters to Blair after she manufactured them.

j.    It was a further part of the conspiracy that Blair and other conspirators would and did submit and cause to be submitted the altered and fictitious bank statements, fraudulent paystubs, altered Social Security benefits letters, and other false and fraudulent documents—all reflecting the means of identification of the individuals seeking mortgages—in support of mortgage loan applications which would and did cause Mortgage Company 1 and Mortgage Company 2 to grant the mortgage loan applications and provide loan proceeds to said individuals.

k.    It was a further part of the conspiracy that Blair often would and did collect cash payments from the individuals seeking mortgages, which payments were not disclosed to Mortgage Company 1 or Mortgage Company 2.

6

l.      It was a further part of the conspiracy that JACKSON, Blair, and other conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the object and purposes of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C § 1349.

## FORFEITURE

1.      The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A).

2.      Upon conviction of a violation of 18 U.S.C. § 1349, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

3.      The property to be forfeited includes, but is not limited to, the following: an order of forfeiture in the amount of at least $25,000, representing the amount of proceeds obtained as a result of the offenses charged in Count One.

4.      If any of the property described above, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the Court;

      d.      has been substantially diminished in value; or

e.     has been commingled with other property which cannot be

divided without difficulty,

The United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,



Foreperson

ROGER B. HANDBERG
United States Attorney

By:    _____

Christopher Poor
Assistant United States Attorney

By:    _____

Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

8

FORM OBD-34

June 24

No.

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Tampa Division

## THE UNITED STATES OF AMERICA

vs.

## ANGEL JACKSON

## INDICTMENT

Violations: 18 U.S.C. $ 1349

A true bill,

███████████████████

Foreperson

Filed in open court this 4th day

of June 2024.

_____
Clerk

**KARINA NIEVES**

Bail $_____

GPO 863 525